**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| BANCROFT GLOBAL DEVELOPMENT<br>2507 Massachusetts Avenue, N.W.<br>Washington, D.C. 20008, | )<br>)<br>)<br>) | |
| MICHAEL STOCK<br>6827 Sorrel Street<br>McLean, VA 22101, | )<br>)<br>)<br>) | |
| and | ) | **Jury Trial Demanded** |
| MELISSA BATES STOCK<br>6827 Sorrel Street<br>McLean, VA 22101, | )<br>)<br>)<br>)<br>) | |
| Plaintiffs,<br>v. | )<br>)<br>) | **Civil Action No. 17-395 (RC)** |
| UNITED STATES OF AMERICA<br>United States Attorney's Office<br>555 4th Street, N.W.<br>Washington, DC 20530, | )<br>)<br>)<br>)<br>) | |
| THOMAS D. HOMAN in his official<br>capacity as Acting Director of U.S.<br>Immigration and Customs Enforcement<br>U.S. Immigration and Customs Enforcement<br>500 12th Street, S.W.<br>Washington, D.C. 20536, | )<br>)<br>)<br>)<br>)<br>)<br>) | |
| ANDREW MCCABE in his official capacity<br>as Acting Director of the Federal Bureau of<br>Investigation<br>Federal Bureau of Investigation,<br>FBI Headquarters<br>935 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20535, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |
| CHANNING PHILLIPS in his official<br>capacity as U.S. Attorney for the District of<br>Columbia<br>U.S. Attorney for the District of Columbia<br>United States Attorney's Office<br>555 4th Street, N.W. | )<br>)<br>)<br>)<br>)<br>) | |

Washington, DC 20530,   )
          )
and         )
          )
DANA J. BOENTE in his official capacity as )
U.S. Attorney for the Eastern District of )
Virginia        )
Justin W. Williams U.S. Attorney's Building )
2100 Jamieson Avenue    )
Alexandria, VA 22314,    )
          )
    Defendants.   )

## SECOND AMENDED COMPLAINT

Bancroft Global Development ("Bancroft"), Michael Stock, and Melissa Bates Stock (collectively, "Plaintiffs"), by their attorneys, for their Second Amended Complaint against the Defendants, the United States of America, Thomas D. Homan in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement ("ICE"), Andrew McCabe in his official capacity as Acting Director of the Federal Bureau of Investigation ("FBI"), Channing Phillips in his official capacity as U.S. Attorney for the District of Columbia, and Dana J. Boente in his official capacity as U.S. Attorney for the Eastern District of Virginia, (collectively, the "Government"), allege as follows:

## NATURE OF THE ACTION

1. Plaintiffs bring this action pursuant to Federal Rule of Criminal Procedure 41(g) and in equity, to recover certain property seized by the Government, and pursuant to 26 U.S.C. §§ 6103, 7431, to seek redress for the improper disclosure of Plaintiffs' sensitive and confidential tax return information.

2.      In November 2011, FBI and ICE agents seized essentially all of Plaintiffs' hardcopy records and electronic media from their residential, business, and storage premises, pursuant to three search warrants.

3.      Although the investigation was ultimately closed without any charges being brought or any other adverse action, much of the property that had been seized was never returned or was entirely destroyed, including records containing Plaintiffs' confidential tax information.

4.      Weeks after the search warrants were executed, the IRS commenced the first of several audits of Plaintiffs' tax returns, and, in connection with those audits, issued formal Information Document Requests to Plaintiffs.  In light of the Government's inexplicable failure to return the seized property or even provide an accounting of the missing records, Plaintiffs have been unable to respond fully to these Requests.

5.      Plaintiffs have now been under audit for over five years, during which time the IRS has relied on Plaintiffs' inability to produce certain documents in support of its claims against Plaintiffs.  Accordingly, as set forth below, Plaintiffs bring this action to compel the Government to provide them with information needed to substantiate their positions in the ongoing tax proceedings.

6.      In the course of the investigation and audits of Plaintiffs, extensive amounts of Plaintiffs' confidential tax return information was disclosed to third parties without justification.

      a.      The FBI and ICE agents who had seized Plaintiffs' property and the prosecutors overseeing that investigation provided records containing sensitive tax information to a third-party government agency.

      b.      IRS employees improperly disclosed to FBI and ICE agents, among others, numerous details about the existence and status of the audit, as well as

specific forms and information that Plaintiffs and the IRS had prepared in connection with the tax proceedings.

    c.    Bancroft's government agency program sponsor with whom it had a classified contractual relationship ("Government Agency"), disclosed details about the ongoing audit to other government agencies, resulting in Bancroft's loss of a valuable government contract.

7.    Plaintiffs accordingly seek redress for the unlawful disclosure of their confidential tax information.

## JURISDICTION AND VENUE

8.    Plaintiffs bring this action pursuant to Federal Rule of Criminal Procedure 41(g) and in equity, to recover certain property seized by the Government in November 2011 pursuant to a search warrant, and pursuant to 26 U.S.C. §§ 6103 and 7431, to seek redress for the improper disclosure of Plaintiffs' confidential tax return information.

9.    Jurisdiction exists under 28 U.S.C. § 1331, the Court's inherent disciplinary powers, and under its equitable jurisdiction powers.

10.    Additionally, Plaintiffs seek the return of property seized under Federal Rule of Criminal Procedure 41(g) and this Court's equitable powers.  Rule 41(g) provides:

> **Motion to Return Property.** A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return.  The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion.  If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

11.    This Court has jurisdiction to grant Rule 41(g) relief in the absence of criminal proceedings, and the Government is not engaged in any open criminal investigations or proceedings related to the property.

12.     Venue is proper pursuant to 28 U.S.C. § 1391(b) and (e) because the underlying events arose in this District—specifically, the majority of the missing property at issue was seized in this District, federal prosecutors in this District oversaw much of the criminal investigations into Bancroft's activities, and the improper disclosures occurred in this District.  Additionally, Rule 41(g) requires motions for the return of property "to be filed in the district where the property was seized."

## PARTIES

13.     Plaintiff Bancroft Global Development is a nonprofit corporation formed in 1999 under the laws of the Commonwealth of Virginia, with its principal place of business at 2507 Massachusetts Avenue, N.W., Washington, D.C.  20008.

14.     Bancroft actively provides education and training for foreign governments and international organizations in disciplines such as explosive ordnance disposal, emergency medicine, and law enforcement, in order to protect civilians and help such areas recover and develop economically.

15.     Plaintiff Michael Stock is President and a Director of Bancroft, and is a resident of the Commonwealth of Virginia.

16.     Plaintiff Melissa Bates Stock is Secretary and a Director of Bancroft, and is a resident of the Commonwealth of Virginia.

17.     Defendant the United States of America is, at all times relevant to this action, a sovereign body politic.  For the purposes of this action, the United States includes, but is not limited to, the Department of Justice, the Internal Revenue Service, the Federal Bureau of Investigation, the U.S. Immigration and Custom Enforcement, the U.S. Attorney's Offices for the District of Columbia and the Eastern District of Virginia, and each agencies' agents and representatives.

18.     Defendant Thomas D. Homan is the Acting Director of ICE.   ICE agents assisted in the criminal investigation at issue and the search and seizure of the property Plaintiffs seek to have returned.  Upon information and belief, ICE currently is in possession of a portion of the property Plaintiffs seek to have returned.

19.     Defendant Andrew McCabe is the Acting Director of the FBI.  FBI agents assisted in the criminal investigation at issue and the search and seizure of the property Plaintiffs seek to have returned.  Upon information and belief, FBI currently is in possession of a portion of the property Plaintiffs seek to have returned.

20.     Defendant Channing Phillips is the U.S. Attorney for the District of Columbia. Upon information and belief, the United States Attorney's Office for the District of Columbia was overseeing parts of the FBI and ICE investigations at issue and currently is in possession of a portion of the property Plaintiffs seek to have returned.

21.     Defendant Dana J. Boente is the U.S. Attorney for the Eastern District of Virginia. Upon information and belief, the United States Attorney's Office for the Eastern District of Virginia was overseeing parts of the FBI and ICE investigations at issue and currently is in possession of a portion of the property Plaintiffs seek to have returned.

## FACTUAL ALLEGATIONS

## I.     THE FAILURE TO RETURN SEIZED PROPERTY TO PLAINTIFFS

22.     From 2008 through 2010, the period under audit, Bancroft's work involved contracts and grants with the government that involved substantial amounts of classified information and materials.

23.     Key members of Bancroft's staff, including Michael Stock and Melissa Bates Stock, were granted clearances for extremely sensitive classified information.  These individuals'

security clearances have been active continuously, and allow for access to the compartmented information relating to the specific government programs and contracts.

24.     The government approved certain facilities at Bancroft's offices for the storage and processing of classified information.  These facilities remain cleared for the storage of classified material relating to those programs.

### A.     FBI And ICE Agents Seize Virtually All Of Bancroft's Records

25.     Notwithstanding the authorizations to handle classified information, in 2011, the FBI and ICE commenced a criminal investigation into whether Bancroft had violated 18 U.S.C. § 1924, concerning the unauthorized removal or retention of classified documents or material.

26.     In connection with that investigation, on November 9, 2011, FBI and ICE agents executed three search warrants:  two warrants authorized by the U.S. District Court for the District of Columbia for search and seizure of property at Bancroft's office at 2507 Massachusetts Avenue, N.W., Washington, D.C.; and one warrant authorized by the U.S. District Court for the Eastern District of Virginia for search and seizure of property at Mr. and Mrs. Stock's personal residence at 8537 Georgetown Pike, McLean, Virginia.  *See* Search and Seizure Warrant, D.D.C., Case No. 1:11-mj-00837; Search and Seizure Warrant, D.D.C., Case No. 1:11-mj-00838; Search and Seizure Warrant, E.D. Va., Case No. 1:11sw625.

27.     In connection with these searches, FBI and ICE agents seized property belonging to Bancroft and Mr. and Mrs. Stock, including essentially all of their electronic media and paper records.

28.     As shown in the inventory lists, agents seized laptops, desktop computers, servers, hard drives, thumb drives, recorders, cell phones, a palm pilot, iPods and iPads, SD cards, video

cassettes, CDs, DVDs, a PS3 DVD drive, a printer, and other electronic storage media, all containing electronic records.

29.     FBI and ICE agents also seized hardcopy records, including multiple boxes of documents, a drop safe, other paper documents, financial papers, a picture badge, passports, a day planner, photographs, and artwork.

30.     Although FBI and ICE agents chose not to seize a small quantity of paper records and electronic media, including appropriately marked and stored classified material, federal agents seized essentially all of Plaintiffs' electronic business and personal records.

**B.     Plaintiffs Require Access To The Seized Records To Respond To IRS Audits**

31.     On or about December 20, 2011, the IRS commenced an audit of Bancroft's tax returns for the years 2008 through 2010.

32.     During that audit, the IRS issued formal Information Document Requests, seeking the underlying records that would establish the accuracy of Bancroft's tax returns.  Because the Government had seized most of Bancroft's electronic and hard copy property, however, Bancroft was unable to respond to the IRS's Requests.

33.     As the audit progressed, on October 16, 2012, counsel for Bancroft wrote Jonathan Malis, an Assistant U.S. Attorney for the District of Columbia, about the status of the seized records.  Counsel explained that the Government's possession of the property precluded Bancroft from responding to the IRS's Information Document Requests, and accordingly requested to speak with Mr. Malis to discuss obtaining copies of the seized data and documents.  Ultimately, Mr. Malis decided not to grant Bancroft access to this material.

34.     In 2012, partly due to Bancroft's inability to provide records that had been seized by the Government, the IRS commenced an additional audit into Michael and Melissa Stock's personal tax returns for the same calendar years.

35.     Again, in order to respond to the audit, Mr. and Mrs. Stock, like Bancroft, needed access to the previously seized records, which still remained in Government custody.

36.     On April 30, 2013, IRS Revenue Agent Rene Hammett—the agent responsible for handling the audits of Plaintiffs—again contacted Plaintiffs' lawyer inquiring about the status of the IRS's outstanding Information Document Requests.

37.     Agent Hammett acknowledged that many of the responsive records had been seized pursuant to a warrant and were now in the possession of the U.S. Attorney's Office, but advised that Elizabeth Henn, counsel for the IRS, had been in contact with federal prosecutors about this issue.

38.     Agent Hammett further advised that the records were ready to be released to Michael Stock, if they hadn't been released already.

39.     Agent Hammett indicated that the IRS was prepared to issue a formal summons to Plaintiffs to compel their production, despite knowing that the exact status of the records was unknown and that Plaintiffs had no way to comply with such a summons.

40.     Notwithstanding Agent Hammett's representations and Ms. Henn's communications with the U.S. Attorney's Office, none of the seized records had in fact been returned, and none would be returned for nearly three more months.

**C.     The FBI And ICE Close The Criminal Investigations Without Further Action But Fail To Return All Of Plaintiffs' Property**

41.     On or about May 23, 2013, Jay Bratt, Deputy Chief of the National Security Section, informed Plaintiffs' counsel that the criminal investigation had been closed without further action.

42.     With regard to Plaintiffs' seized property, Mr. Bratt stated that it had been segregated based on whether the item contained classified information:  All unclassified records

would be returned via counsel; all classified records would be sent to an unidentified government agency.

43.    Six weeks later, on July 11, 2013, the FBI delivered to Plaintiffs' counsel's law firm boxes of portions of the property it had seized.

44.    There were numerous flaws with the FBI's "return" of what it claimed was all of Plaintiffs' unclassified property:

a.    *First*, the inventory of returned materials did not include all of the seized unclassified property, as Mr. Bratt had represented, including critical financial information needed to respond to the ongoing audits.[1]  Upon information and belief, these missing unclassified electronic media and records were sent in error to the classified storage facility at the unidentified government agency.

b.    *Second*, highly classified material had been commingled with unclassified records while in Government custody.  As a result, unclassified records were sent to the unidentified government agency, as noted above, rather than returned to Plaintiffs.

c.    *Third*, the returned materials included materials clearly marked as classified, such that appropriately designated electronic media containing Top Secret/Codeword information were given to Plaintiffs' counsel's law firm staff lacking any security clearances or secured facilities.  (Upon realizing that the materials included Top Secret, compartmented information, Bancroft promptly notified the government program security officer that the FBI had mishandled classified information.  He

---

[1] The unclassified items that are known to be missing include: classified organizational chart; box containing various classified papers/documents; various classified papers/documents I; various classified papers/documents II; and several desktop and laptop computers.  This list is not exhaustive, insofar as it does not include other property that was seized but not documented on the inventory lists provided to Plaintiffs.

10

requested that Plaintiffs permit him to keep the material, so he could investigate the FBI's mishandling.  Plaintiffs agreed and provided the material to the security officer on July 29, 2013.)

d.     *Fourth*, documentation of the returned property contained errors.  It listed items that were not included on the Government's inventory of items initially seized, indicating that the agents had seized more records than what had been represented to Plaintiffs.  Moreover, the documentation failed to list items actually returned to Plaintiffs, and listed purportedly returned items that had not in fact been returned.

e.     *Fifth*, electronic media had been wiped clean of all its data, and physical items had been destroyed while in FBI custody.[2]

45.     With regard to the seized property containing classified information, Mr. Bratt wrote a letter to Plaintiffs stating that the government was retaining five laptops, three desktops, and thumb and USB drives, and was storing them at the unidentified government agency.

46.     Mr. Bratt claimed the classified records were not being returned because they "cannot be stored or maintained in areas that are not approved for the storage of classified information.  Therefore, they have been returned to the agency which owns the information at issue."

47.     This proffered explanation for the failure to return the classified information was groundless, insofar as Bancroft had both the necessary clearances and the facilities to store classified records.  In fact, the Government knew that Bancroft had retained possession of a small quantity of classified material, located in its approved secure storage.  Moreover, the criminal

_____

[2] The unclassified items that were destroyed or damaged while in Government custody include: two 21" Apple iMac computers; one 27" Apple iMac computer; and at least two external hard drives.

investigation had been closed without charges or a single finding that Bancroft had mishandled classified information.

48.     The FBI could have, and should have, returned the classified information in the same manner that it was seized—namely, via FBI custody to Bancroft's secure facility, which remains cleared for and contains classified information to this day.

49.     In light of these problems, Plaintiffs still did not have access to sizeable amounts of information needed to respond to the ongoing audits.

50.     Plaintiffs' counsel attempted to engage in informal negotiations with the Government to obtain the return of their classified and unclassified materials—or at least be permitted to identify the mistakenly retained unclassified materials.

51.     Those efforts failed.  Instead, the Government refused access, refused to provide an accounting, and even refused to identify where the property was being stored.

52.     Despite the Government's continued refusal to acknowledge, among other problems, that unclassified records had been retained in error, on June 24, 2015, ICE Special Agent John Dietrich delivered by unsecure means two more boxes of "miscellaneous documents" to Bancroft's office.  These boxes contained, *inter alia*, a portion of Plaintiffs' seized tax returns and return information.

53.     The Receipt of Return indicated that these documents had been in the possession of Customs and Border Protection, an agency which had not participated in the November 2011 seizures and was not the government agency that "owns the information at issue" to which the retained records had been sent.  No explanation was ever provided of why seized property was in the custody of a seemingly irrelevant agency or why property was still in government possession at all.

54.     Even after Customs and Border Protection returned these two boxes of documents, extensive amounts of unclassified records were still missing, not to mention Plaintiffs' inability to access any of the classified information that had been seized and retained by the Government.

55.     To date, the Government has failed to return, or event account for, significant quantities of Plaintiffs' property, including proprietary business records and sensitive personal records.

**D.     The Harm Caused By The Government's Failure To Return Plaintiffs' Property Is Ongoing**

56.     Whereas the criminal investigation is over, the audits of Plaintiffs are still underway and thus the need for the missing seized property remains.

57.     Because the Government has not returned the missing unclassified records, Plaintiffs have been unable to provide the IRS with much of the tax information requested or use such records as exhibits to their tax filings.

58.     Plaintiffs have been equally hamstrung by the inability to access their classified records.  Although Plaintiffs were allowed to share classified information with Revenue Agent Hammett on several occasions, only once were they given access to classified records to prepare for those meetings.  And even during that single instance, Plaintiffs were given only a few hours in advance of the meeting to review a subset of the Government's contract files rather than Plaintiffs' own classified electronic media and hardcopy records.

59.     Based on the lack of records and information provided by Bancroft, Agent Hammett has made a number of assertions adverse to the Plaintiffs in the course of those audits, which are presently disputed in the IRS proceedings.

60.     To rebut these assertions, Plaintiffs' counsel has made further inquiries of the Government.  Specifically, on November 7, 2016, plaintiffs' counsel contacted the U.S. Attorney's

Offices for the District of Columbia and the Eastern District of Virginia regarding the status of the missing seized documents and to obtain an accounting of the chain of custody.

61.     Although Ken Kohl, an Assistant U.S. Attorney for the District of Columbia, initially advised that he would attempt to provide information about the missing records, he largely failed to respond to Plaintiffs' follow-up inquiries and, by mid-December 2016, had effectively become non-responsive.  On January 10, 2017, James Gillis, an Assistant U.S. Attorney for the Eastern District of Virginia, advised that his office was still attempting to locate the missing records.

62.     To date, it is unclear exactly what materials the Government initially seized, how materials were handled and safeguarded during the investigation, what materials have not been returned to Plaintiffs, and which agency currently controls them.

63.     The Government also has failed to state whether copies exist of the information and data that the Government lost, mishandled, or destroyed.

64.     What is known is that the Government continues to retain many of Plaintiffs' unclassified records and nearly all of Plaintiffs' classified records without justification.

65.     Due to the Government's continued refusal to return or provide an accounting of the missing records to address these issues, Plaintiffs face severe consequences in the tax audits. This action was accordingly commenced in an effort to obtain the return of or access to their seized records and to enable Plaintiffs to produce the documentary evidence needed in the tax proceedings.

## II.   IMPROPER DISCLOSURE OF PLAINTIFFS' RETURN AND RETURN INFORMATION

### A.   The FBI and U.S. Attorney's Offices Improperly Disclosed Bancroft's Tax Return Information

66.   The mishandling of the seized property not only precluded Plaintiffs' from responding to the IRS audits, but also resulted in the improper sharing of Plaintiffs' sensitive and otherwise confidential tax return information with unauthorized persons, for no lawful purpose.

67.   As noted above, in July 2013, the FBI delivered to Plaintiffs' counsel some of the property that had been seized two years earlier.  Missing from those boxes was substantial amounts of Plaintiffs' unclassified records and almost all of Plaintiffs' classified records.  (As noted above, a small portion of the classified records was returned to Plaintiffs in error.)

68.   The missing records included extensive amounts of sensitive and otherwise confidential tax information spanning a 12-year period from 1999 through 2011.  Specific tax materials that had not been returned to Plaintiffs included:

   a.   Forms 1120 for corporations wholly owned by Michael Stock, such as Donovan, Bond & Company;

   b.   W-2s, Form 1099, and Form 1040 for Mr. and Mrs. Stock and other Bancroft employees; and

   c.   Underlying information that Plaintiffs had used to prepare their tax filings, including (i) accounting records that identified sources of income, payments, and receipts, (ii) documentation of assets and liabilities, personal financial statements depicting net worth, and (iii) privileged correspondence with Bancroft's counsel relating to tax matters.

69.     Because the U.S. Attorney's Offices refused to answer any of Plaintiffs' inquiries concerning the missing property, including their missing tax records, Plaintiffs did not know what had happened to their tax information until May 2016 as part of the audit process.

70.     At that point, the IRS revealed for the first time details about the missing tax records indicating that they no longer were in FBI or ICE custody.  The IRS acknowledged for the first time that "[i]t is true that not all the taxpayer's documents were returned after the seizure," and explained that "they were maintained in a facility that could have been accessed by IRS personnel with the proper clearance if the taxpayer had provided permission."

71.     Upon information and belief, the facility referenced in this statement, and the current location of the missing tax records, is a facility belonging to the Government Agency with whom Bancroft had a classified contractual relationship.  Although the Government Agency was Bancroft's program sponsor, it was not authorized to access Bancroft's tax-related information.

72.     In short, FBI and ICE agents and the prosecutors overseeing the investigation provided Government Agency personnel with documents containing confidential and sensitive tax return information, without authorization or any legitimate purpose.  Upon information and belief, Government Agency personnel then reviewed those records before storing them in a secure facility.

## B.     The IRS Disclosed Tax Information to the U.S. Attorney's Office for the District of Columbia and the Department of Justice.

73.     Like the government officials above, IRS employees involved in the audits of Plaintiffs have continually disclosed confidential tax information to third parties.

74.     In or around July 2012, Elizabeth Henn, counsel for the IRS, contacted Assistant U.S. Attorney Malis and Deputy Chief Bratt about issues related to the audit of Bancroft.  Ms. Henn's ostensible purpose in contacting these individuals was merely to request access to

Plaintiffs' missing tax records, which, as explained above, had been seized and remained in Government custody.

75.     During these conversations, Ms. Henn engaged in an extensive and detailed dialog about the audit of Bancroft with Messrs. Malis and Bratt over the course of a year, during which time she disclosed the following information:

    a.     the existence and status of the audit;

    b.     the Revenue Agent's prediction that Bancroft's tax-exempt status would be revoked;

    c.     the Revenue Agent's view that Bancroft was not being cooperative; and

    d.     specific information about Plaintiffs' accounts, transactions, and relationships with third parties.

76.     The scope of this information far surpassed the limited scope of any disclosures needed to request access to the missing records, particularly given the understanding of all parties involved at the time that the records could not be disclosed to the IRS in light of issues concerning the attorney-client privilege.

77.     Indeed, the conversations were not investigative in any respect; the IRS was not seeking answers to any audit-related queries and instead was simply requesting access to documents.

78.     Although Plaintiffs became aware in April 2013 that Ms. Henn previously had contacted a U.S. Attorney's Office, Plaintiffs were led to believe that the limited purpose of the discussion was to determine whether Bancroft's missing records had been, or soon would be, returned.  Again, only during the audit process in May 2016 did Plaintiff's learn the true extent of

the IRS's disclosures—namely, that discussions between Ms. Henn, Mr. Malis, and Mr. Bratt had been ongoing and addressed myriad topics concerning the audits.

### C. The IRS Disclosed Bancroft's Tax Return Information To the Government Agency

79.     Throughout the audit, the IRS also shared with the Government Agency most, if not all, audit activity of Bancroft, including IRS-generated documents and Bancroft's own return information.

80.     The disclosures ranged from the Information Document Requests to formal IRS and taxpayer filings made in connection with the IRS proceedings.

81.     More specifically, in late 2011 or early 2012, IRS officials reached out to Government Agency employees about the fact that the IRS was conducting an audit of Bancroft. This culminated in a meeting in early 2012 at the IRS's headquarters, during which IRS officials informed Government Agency employees that the IRS would revoke Bancroft's tax exempt status.

82.     After Agent Hammett received permission to access the Government Agency's compartmented program information, she continued to speak with Government Agency employees about the audit at various points in 2012.  This included, for example, a conversation with the then-Director of Government Agency ("Michael"), during which Agent Hammett predicted the outcome of the audit and (falsely) claimed that Plaintiffs were being uncooperative.

83.     A continuing pattern of improper disclosures has continued throughout the audit. For example, a handwritten note, dated May 6, 2016 and signed by IRS official Nancy Todd, indicated that she had shared with a Government Agency employee ("Richard") information prepared by the IRS exam in response to Bancroft's taxpayer protest.

84.     Upon information and belief, other unlawful communications between IRS and Government Agency employees have occurred during essentially the entire period of the audit,

such as a discussion of (i) Bancroft's accounting system and record-keeping; (ii) whether Bancroft properly had managed federal funds; (iii) whether Bancroft used Generally Accepted Accounting Principles; and (iv) whether the Government Agency would be willing to pressure Bancroft to relinquish its tax-exempt status.

**D.    The IRS and FBI Disclosed Bancroft's Tax Return Information To ICE**

85.    Like the FBI, ICE employees also became privy to Plaintiffs' confidential tax information as a result of unlawful disclosures.

86.    As described above, on June 24, 2015, ICE agents returned two boxes of miscellaneous documents to Bancroft's office, despite prior representations that all unclassified records had been returned in 2013.

87.    While returning the records, ICE Special Agent John Dietrich indicated that the ongoing audit was what prompted ICE to return the records, and that the contents of the boxes being returned might enable Bancroft to respond to the IRS's inquiries.

88.    ICE officials refused to say whether ICE possessed other documents of Bancroft's, and refused to provide any further clarification about what had prompted the delayed return of these documents, more than two years after all unclassified property was purported to have been returned to Bancroft.

89.    Special Agent Dietrich's apparent awareness of the existence, status, scope, and anticipated outcome of the IRS audit evidences multiple improper disclosures of Bancroft's tax return information.

90.    ICE agents should never have been made aware of the existence of an IRS audit in the first place, much less that it was still unresolved three-and-a-half years after it began.  Upon

information and belief, ICE was additionally informed that the audit was expected to result in the revocation of Bancroft's tax-exempt status.

91.     Upon further information and belief, this confidential information was disclosed to ICE officials by IRS and FBI employees.

**E.     The Government Agency Improperly Disclosed Bancroft's Tax Return Information To Multiple U.S. Employees**

92.     In December 2016, the Government Agency's parent organization (the "Organization")[3] was considering candidates for a so-called "sole-source contract" that required operational capabilities very similar to those Bancroft had historically performed for the Organization.

93.     An individual acting as an intermediary briefed the Organization's personnel on Bancroft's qualifications for the project, and received a strong favorable response.

94.     Given the degree of urgency and that Bancroft appeared well-suited for the work, the Organization requested a meeting with Bancroft, which was scheduled for January 12, 2017.

95.     Although the intermediary had briefed Organization personnel on Bancroft's capabilities, the intermediary had withheld the company name.   Accordingly, the Organization did not know that Bancroft was the entity with whom it would be meeting.

96.     Within days of learning that Bancroft was that entity, in January 2017, Organization personnel cancelled the meeting.  They informed the intermediary that the Organization had been made aware of the IRS audit, that the IRS was going to shut down Bancroft, and that Bancroft's reputation involved a troublesome history of audits.

---

[3] The Second Amended Complaint refers to this parent entity simply as the "Organization," because the relationship between Bancroft and that entity remains classified.

97.     Upon information and belief, the Organization heard this largely false information from personnel working for the Government Agency.

98.     In addition, the Government Agency even admitted in a statement provided to the IRS that Government Agency employees discussed Bancroft's tax return information with nine individuals, some of whom work in different parts of government than the Government Agency.

99.     For instance, the Government Agency disclosed Bancroft's tax information to management-level staff in a procurement entity, who were well-positioned to make decisions about Bancroft's eligibility to receive government contracts.

100.    Bancroft learned of these disclosures with these individuals in May of 2016, when the Government Agency's list of third-party contacts was disclosed during the audit.

101.    Government Agency communications with these individuals constituted an improper disclosure of Bancroft's tax return information.  These listed individuals had no specific knowledge of Bancroft or other information useful to IRS, and thus were in no position to respond to inquiries related to the IRS audit.  They were, however, well positioned to prevent Bancroft from forming business relationships with a number of government activities similar to the Government Agency.

102.    Notably, the list did not include the Government Contracting Officer who had worked directly with Bancroft and the Government Agency in the past, and who would have had information responsive to issues raised by the IRS.

**FIRST CAUSE OF ACTION**
**PETITION FOR RETURN OF PROPERTY AGAINST**
**UNITED STATES OF AMERICA, THOMAS D. HOMAN, ANDREW MCCABE,**
**CHANNING PHILLIPS, AND DANA J. BOENTE**
**(Federal Rule of Criminal Procedure 41(g))**

103.    Plaintiffs repeat and re-allege the foregoing allegations as if more fully set forth herein.

104.    Despite Plaintiffs' good faith efforts to secure the return of property seized by the government in November 2011, Defendants continue to retain Plaintiffs' property without any legal justification.

105.    Defendants' failure to return the seized property has caused Plaintiffs considerable hardship, including, without limitation, Plaintiffs' inability to fully respond to IRS audit requests—resulting in an unnecessarily protracted audit—and expenditures for the provision of legal services in connection with attempts to obtain the unreasonably retained property as well as the lengthier IRS audit.

106.    The Government's retention of Plaintiffs' property, now approaching six years in duration, has long since outlasted any rationale justifying the initial seizure, thereby evidencing a callous disregard for the Plaintiffs' ownership interest in the retained property.

107.    Plaintiffs have a manifest interest in and need for the documents in order to fully respond to IRS audit requests.

108.    Plaintiffs have suffered and continue to face the prospect of irreparable injury by virtue of Defendants' multi-year retention of Plaintiffs' property, punctuated by damage to the property, commingling of classified and unclassified documents resulting in the delivery of classified materials to non-secure locations, and entire periods of time during which Plaintiffs' property could not be accounted for.

109.    Because Defendants have no legitimate interest in the retained property, Plaintiffs enjoy a presumption of rightful possession of all seized property, and Defendants bear the burden of persuading the Court that the continued retention of such property is reasonable.

110.    Based on the foregoing, Plaintiffs are entitled to an order pursuant to this Court's authority under Rule 41(g) directing the Government to return and account for all property seized from Plaintiffs in November 2011.

## SECOND CAUSE OF ACTION
### PETITION FOR RETURN OF PROPERTY AGAINST
### UNITED STATES OF AMERICA, THOMAS D. HOMAN, ANDREW MCCABE,
### CHANNING PHILLIPS, AND DANA J. BOENTE
#### (The Court's Equitable Authority)

111.    Plaintiffs repeat and re-allege the foregoing allegations as if more fully set forth herein.

112.    This cause of action is pled in the alternative, in the event the Court denies the relief requested in the First Cause of Action

113.    Plaintiffs have no alternative remedy at law by which to challenge the Government's unreasonable retention of Plaintiffs' property, as the government has not instituted civil forfeiture proceedings and does not intend to prosecute Plaintiffs.

114.    Even without Rule 41(g), this Court has the authority—in equity—and duty to return property held by the Government once the Government's need for the property terminates.

115.    Based on the foregoing, Plaintiffs are entitled to an order pursuant to this Court's equitable powers directing the Government to return and account for all property seized from Plaintiffs in November 2011.

## THIRD CAUSE OF ACTION
### UNLAWFUL DISCLOSURE OF PLAINTIFFS' RETURN AND
### RETURN INFORMATION AGAINST THE UNITED STATES
#### (26 U.S.C. §§ 6103, 7431)

116.     Plaintiffs repeat and re-allege the foregoing allegations as if more fully set forth herein.

117.     26 U.S.C. § 6103 declares that tax "[r]eturns and return information shall be confidential" and prohibits disclosure and inspection by United States employees.  26 U.S.C. § 7431 provides a cause of action against the United States for inspections or disclosures of tax returns or return information, made "knowingly, or by reason of negligence" in violation of § 6103.

118.     The FBI and U.S. Attorney's Offices unlawfully disclosed Plaintiffs' confidential returns and return information by sharing Plaintiffs' tax returns and other documents containing return information with Government Agency employees.

119.     These disclosures were not authorized by section 6103 nor rules promulgated thereunder.

120.     These disclosures were committed either willfully or with gross negligence, or by reason of simple negligence.

121.     Based on the foregoing, Plaintiffs are entitled to the sum of actual and punitive damages or statutory damages in the amount of $1,000 per each unauthorized disclosure, whichever is greater, as provided by section 7431.

### FOURTH CAUSE OF ACTION
### UNLAWFUL DISCLOSURE OF PLAINTIFFS' RETURN AND RETURN INFORMATION AGAINST THE UNITED STATES
### (26 U.S.C. §§ 6103, 7431)

122.     Plaintiffs repeat and re-allege the foregoing allegations as if more fully set forth herein.

123.     The IRS made unlawful disclosures of Plaintiffs' confidential tax return and return information by Elizabeth Henn's communications to Assistant U.S. Attorney Malis and Deputy

Chief Bratt disclosing the existence, status, scope, and predicted outcome of the ongoing audit, among other confidential information.

124.    These disclosures were not authorized by section 6103 nor rules promulgated thereunder.

125.    These disclosures were committed either willfully or with gross negligence, or by reason of simple negligence.

126.    Based on the foregoing, Plaintiffs are entitled to the sum of actual and punitive damages or statutory damages in the amount of $1,000 per each unauthorized disclosure, whichever is greater, as provided by section 7431.

**FIFTH CAUSE OF ACTION**
**UNLAWFUL DISCLOSURE OF PLAINTIFFS' RETURN AND RETURN**
**INFORMATION AGAINST THE UNITED STATES**
**(26 U.S.C. §§ 6103, 7431)**

127.    Plaintiffs repeat and re-allege the foregoing allegations as if more fully set forth herein.

128.    The IRS unlawfully disclosed Plaintiffs' confidential return and return information to the Government Agency.

129.    Tax return information unlawfully disclosed to the Government Agency includes the following:  the existence and expected result of the audit, the Information Document Requests, and multiple formal filings made in connection with the IRS proceedings.

130.    IRS Revenue Agent Hammett unlawfully disclosed Plaintiffs' confidential tax return information by having multiple conversations with Government Agency personnel contemporaneous with and regarding the status, expected outcome, and Plaintiffs' response to the audit.

131.    IRS official Nancy Todd unlawfully disclosed the IRS's and Plaintiffs' tax filings by sharing the documents with a Government Agency employee.

132.    These disclosures were not authorized by section 6103 nor rules promulgated thereunder.

133.    These disclosures were committed either willfully or with gross negligence, or by reason of simple negligence.

134.    Based on the foregoing, Plaintiffs are entitled to the sum of actual and punitive damages or statutory damages in the amount of $1,000 per each unauthorized disclosure, whichever is greater, as provided by section 7431.

## SIXTH CAUSE OF ACTION
## UNLAWFUL DISCLOSURE OF PLAINTIFFS' RETURN AND RETURN INFORMATION AGAINST THE UNITED STATES
## (26 U.S.C. §§ 6103, 7431)

135.    Plaintiffs repeat and re-allege the foregoing allegations as if more fully set forth herein.

136.    Upon information and belief, the IRS and FBI unlawfully disclosed Plaintiffs' confidential return and return information to ICE officials, including the existence, status, and expected outcome of the audit.

137.    These disclosures were not authorized by section 6103 nor rules promulgated thereunder.

138.    These disclosures were committed either willfully or with gross negligence, or by reason of simple negligence.

139.    Based on the foregoing, Plaintiffs are entitled to the sum of actual and punitive damages or statutory damages in the amount of $1,000 per each unauthorized disclosure, whichever is greater, as provided by section 7431.

## SEVENTH CAUSE OF ACTION
## UNLAWFUL DISCLOSURE OF PLAINTIFFS' RETURN AND RETURN
## INFORMATION AGAINST THE UNITED STATES
## (26 U.S.C. §§ 6103, 7431)

140.    Plaintiffs repeat and re-allege the foregoing allegations as if more fully set forth herein.

141.    Government Agency employees unlawfully disclosed Plaintiffs' confidential tax return and return information to personnel of a prospective governmental partner of Bancroft's, and at least nine other U.S. government employees.

142.    These disclosures were not authorized by section 6103 nor rules promulgated thereunder.

143.    These disclosures were committed either willfully or with gross negligence, or by reason of simple negligence.

144.    Based on the foregoing, Plaintiffs are entitled to the sum of actual and punitive damages or statutory damages in the amount of $1,000 per each unauthorized disclosure, whichever is greater, as provided by section 7431.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

A.      On Count I – Petition for Return of Property pursuant to Rule 41(g) of the Federal Rules of Criminal Procedure:  Order that the Defendants: (1) provide a detailed accounting of the status of all property seized in November 2011; and (2) return and/or grant full access to the originals and all copies of records that were seized by the Government, for Plaintiffs' use in ongoing tax proceedings.  To the extent any property is missing or has been destroyed, award reasonable attorney's fees, costs, and expenses pursuant to relevant statutes.

B.    On Count II – Petition for Return of Property under Court's Equitable Authority (pled in the alternative):   Order that the Defendants: (1) provide a detailed accounting of the status of all property seized in November 2011; and (2) return and/or grant full access to the originals and all copies of records that were seized by the Government, for Plaintiffs' use in ongoing tax proceedings.  To the extent any property is missing or has been destroyed, award reasonable attorney's fees, costs, and expenses pursuant to relevant statutes.

C.    On Count III – Unlawful Disclosure of Return and Return Information Against the United States:  Order that the United States pay Plaintiffs an amount no less than $1,000 for each unauthorized inspection or disclosure of Plaintiffs information, plus any other amount, including punitive damages, allowed under 26 U.S.C. § 7431.

D.    On Count IV – Unlawful Disclosure of Return and Return Information Against the United States:  Order that the United States pay Plaintiffs an amount no less than $1,000 for each unauthorized inspection or disclosure of Plaintiffs information, plus any other amount, including punitive damages, allowed under 26 U.S.C. § 7431.

E.    On Count V – Unlawful Disclosure of Return and Return Information Against the United States:  Order that the United States pay Plaintiffs an amount no less than $1,000 for each unauthorized inspection or disclosure of Plaintiffs information, plus any other amount, including punitive damages, allowed under 26 U.S.C. § 7431.

F.    On Count VI – Unlawful Disclosure of Return and Return Information Against the United States:  Order that the United States pay Plaintiffs an amount no less than $1,000 for each unauthorized inspection or disclosure of Plaintiffs information, plus any other amount, including punitive damages, allowed under 26 U.S.C. § 7431.

G.      On Count VII – Unlawful Disclosure of Return and Return Information Against the

United States:  Order that the United States pay Plaintiffs an amount no less than

$1,000 for each unauthorized inspection or disclosure of Plaintiffs information, plus

any other amount, including punitive damages, allowed under 26 U.S.C. § 7431;

and

H.      Award reasonable attorneys' fees, costs, and expenses pursuant to relevant statutes,

including 26 U.S.C. §§ 7430, 7431.

I.      Grant such other relief as this Court deems just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiffs, by counsel, request a trial by jury in this action of all issues so triable.


Dated: Washington, D.C.                              Respectfully submitted,
       July 28, 2017
                                                     By: /s/ Michael A. Goldsticker
                                                     Simon A. Latcovich (D.C. Bar No. 980319)
                                                     Michael A. Goldsticker (D.C. Bar No. 1023452)
                                                     WILLIAMS & CONNOLLY LLP
                                                     725 Twelfth Street, N.W.
                                                     Washington, D.C.  20005
                                                     Telephone: (202) 434-5000
                                                     Facsimile: (202) 434-5029
                                                     mgoldsticker@wc.com

                                                     William H. Shawn (D.C. Bar No. 198416)
                                                     SHAWNCOULSON, LLP
                                                     1850 M Street, N.W., Suite 280
                                                     Washington, D.C.  200036
                                                     Telephone: (202) 331-2300
                                                     Facsimile: (202) 664-8383
                                                     wshawn@shawncoulson.com

                                                     *Attorneys for Plaintiffs*